**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**J&A CONCRETE CORP.,**

                    **Plaintiff,**          **21-cv-11097 (JGK)**

        **- against -**                  <u>**MEMORANDUM OPINION**</u>
                                        <u>**AND ORDER**</u>
**DOBCO INC., ET AL.,**

                    **Defendants.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     This case concerns a payment dispute between a general
contractor and a subcontractor, and related indemnification
claims asserted by a surety company against the subcontractor.
The plaintiff, J&A Concrete Corporation ("J&A"), the
subcontractor, asserted ten claims against the defendants, Dobco
Inc. ("Dobco"), the general contractor, and Arch Insurance
Company ("Arch"), which issued a performance bond on J&A's
behalf and a payment bond on Dobco's behalf. Dobco asserted
counterclaims against J&A and a crossclaim against Arch. Arch
asserted counterclaims against J&A and J&A's contractual
indemnitors (the "Indemnitors") and a crossclaim against Dobco.
Before the Court are cross-motions for summary judgment by J&A
and Dobco. For the following reasons, J&A's motion is **denied,**
and Dobco's motion is **granted in part and denied in part.**

1

**I.**

The following facts are based on the parties' Local Civil Rule 56.1 statements and supporting papers, and are undisputed unless otherwise noted.

**A.**

In March 2018, Dobco entered into a contract (the "Contract") with the New York City Department of Design and Construction (the "Owner"), pursuant to which Dobco agreed to provide general contractor construction services for the 40th Precinct Police Station (the "Project"), located in the Bronx, New York. Dobco Rule 56.1 Statement ¶ 1, ECF No. 120; J&A Rule 56.1 Statement ¶ 1, ECF No. 116-1.

On May 31, 2018, Dobco entered into a subcontract (the "Subcontract") with J&A, pursuant to which J&A agreed to provide materials and labor for certain concrete construction work for the Project. Dobco Rule 56.1 Statement ¶ 2; J&A Rule 56.1 Statement ¶ 3. In relevant part, section 8.1.5 of the Subcontract required J&A to "provide all labor, equipment and tools to coordinate and install all required embedded material supplied by others including but not limited to; anchor bolts, base plates, sleeves, etc. in accordance with the Subcontract Documents including, but not limited to, plans, specifications and addenda." Dobco Rule 56.1 Statement ¶ 11; Subcontract at 16, Ex. F to Wagner Decl., ECF No. 110-6.

Section 1.1 of the Subcontract incorporated by reference the entire Contract, modifications to the Contract, documents listed in Article 15 of the Subcontract, and modifications to the Subcontract issued after the execution of the Subcontract ("Modifications"). Subcontract at 2. Section 1.4 described a Modification as "a written amendment to this [Subcontract] signed by both parties, or as otherwise described in, and in accordance with the provisions of, Article 5." Id.

Section 5.1 provided:

The Contractor reserves the right, from time to time, whether the Work or any part thereof shall or shall not have been completed, to make changes, modifications, additions and/or omissions in the Work as it may deem necessary, upon written order to the Subcontractor (collectively referred to in this Agreement as "Modifications"). The value of the Work to be changed, added or omitted shall be stated in said written order and shall be added to or deducted from the Price. . . .

Should the parties hereto be unable to agree as to the value of the Modification, the Subcontractor shall proceed with the Work promptly under the written order of the Contractor which order the stated value of the Work shall be omitted, and the determination of the value of the Work shall be referred to the Architect or, if required by the Prime Contract, the Owner, whose decision shall, at the Contractor's election, be final and binding upon the Subcontractor.

All Modifications in the Work ordered in writing by Contractor shall be deemed to be a part of the Work hereunder and shall be performed and furnished in strict accordance with all the terms and provisions of this Agreement and the other Contract Documents.

Id. at 11–12.

Section 6.1.1 required all other claims and disputes related to the Subcontract to be addressed through "mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." Id. at 12. Section 6.2.4 required J&A to "continue to perform all of its work and/or alleged extra work pending final resolution" of any claim that was the subject of mediation or binding dispute resolution. Id. at 13.

Pursuant to section 7.1, J&A could terminate the Subcontract for "nonpayment of amounts due under this Subcontract for 60 days or longer." Id. Section 7.1 continued:

> In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, . . . the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools and construction equipment and machinery, including reasonable overhead, profit and damages.

Id.

Article 11 of the Subcontract governed the payment process. Section 11.1.3 stated:

> Provided an Application for Payment is received by the Contractor not later than the 15th day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next Application for Payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment no later than seven (7) business days after the Contractor receives payment from the Owner unless the Contractor asserts any offset

or claim to such payments otherwise to be made to the Subcontractor.

Id. at 17. Section 11.1.7.1 provided that the amount of each progress payment should first include:

> **.1** That portion of the Subcontract Sum properly allocable to completed Work;
>
> **.2** That portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work . . . ; and
>
> **.3** The amount, if any, for changes in the Work that are not in dispute and have been properly authorized by the Contractor, to the same extent provided in the Prime Contract, pending a final determination by the Contractor of the cost of changes in the Subcontractor's Work, even though the Subcontract Sum has not yet been adjusted.

Id. at 18. Section 11.1.7.2 provided that the amount of each progress payment should then be reduced, in relevant part, by:

> **.2** The amount, if any, for Work that remains uncorrected and for which the Contractor has previously withheld or nullified, in whole or in part, a Certificate for Payment for a cause that is the fault of the Subcontractor;
>
> **.3** For Work performed or defects discovered since the last payment application, any amount for which the Contractor may withhold payment in whole or in part, for a cause that is the fault of the Subcontractor . . . .

Id.

One of the documents identified in the Appendix in Article 15 of the Subcontract, incorporated by reference pursuant to section 1.1, was the Procedure for Applications for Payment (the "Application Procedure"). Id. at 32. The Application Procedure

5

set forth the following requirements for submitting applications

for progress payments:

> The subcontractor shall prepare Payment Application on AIA G702 format and submit it to the Contractor by the 15th of the month for approval.
>
> After Subcontractor receives approval, original executed copy of the Application for Payment shall be submitted to the Contractor with the following attachments:
>
> 1. Transmittal Letter
>
> 2. Checklist for Payments
>
> 3. Application and Certificate for Payment AIA G702 and AIA G703 executed and notarized . . .
>
> 5. Subcontractor's executed and notarized Partial Release, Waiver and Subcontractor's Affidavit of Payment; . . . .

Application Procedure, Ex. E to Mladenovic Decl., ECF No. 117-5.

> Section 11.1.9 of the Subcontract provided:
>
> Upon the partial or entire disapproval by the Contractor of the Subcontractor's Application for Payment, the Contractor shall provide notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

Subcontract at 19.

> Pursuant to section 7.1.1, Dobco could immediately

terminate the Subcontract if, among other things:

> **3.** The Subcontractor fails or neglects to carry out the Work in accordance with the Subcontract Documents, including but not limited to, providing defective or non-conforming Work or causing delays in execution of the Work, or otherwise fails to fulfill its obligations under this Subcontract and fails within seven calendar days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness . . . .

Id. at 13.

**B.**

Beginning in July 2020, a dispute arose between Dobco and J&A as to whether J&A was responsible for the steel cutting and welding work required to install steel embeds in the upper decks (the "Embed Work"). J&A Rule 56.1 Statement ¶¶ 14-16.[1] In J&A's view, the Embed Work was outside the scope of the work contemplated by the Subcontract; in Dobco's view, the Embed Work was J&A's responsibility under the Subcontract. See id. ¶¶ 15-16.

On November 16, 2020, Dobco directed J&A to perform the Embed Work, but J&A refused. Dobco Rule 56.1 Statement ¶¶ 45-46. After J&A refused to perform this work, Dobco had to hire another firm to install the embeds at a cost of $65,336. Id. ¶ 50; Ex. Q to Mladenovic Decl., ECF No. 117-7.

On November 20, 2020, J&A submitted to Dobco a draft payment requisition for the period ending November 30, 2020 (the "November Pay App"), requesting payment of $152,541.40. Dobco Rule 56.1 Statement ¶ 49; J&A Rule 56.1 Statement ¶ 17.

On December 4, 2020, Dobco issued to J&A a deduct change order, Change Order 22, for $65,336, in light of J&A's refusal to perform the Embed Work. Dobco Rule 56.1 Statement ¶ 50; J&A

---

[1] Steel embeds are used to attach steel to concrete.

7

Rule 56.1 Statement ¶ 18. Three days later, J&A rejected Change Order 22. J&A Rule 56.1 Statement ¶ 21.

On January 12, 2021, Dobco issued to J&A a revised November Pay App (the "Revised November Pay App"), reflecting an amount due to J&A of $110,115. Id. ¶ 24; Dobco Rule 56.1 Statement ¶ 51.

However, on January 19, 2021, Dobco notified J&A that the Revised November Pay App had to be reduced by three deductive change orders: Change Orders 20, 21, and 22. Dobco Rule 56.1 Statement ¶ 52; J&A Rule 56.1 Statement ¶ 25. That same day, Dobco presented J&A with another revised November Pay App, this time reflecting an amount due of $10,430 because of the three deductive change orders. Dobco Rule 56.1 Statement ¶ 53; J&A Rule 56.1 Statement ¶ 26.

On January 20, 2021, Dobco provided J&A with another revised November Pay App (the "Final November Pay App"), which included the three deductive change orders and reflected an amount due of $12,697.27. Dobco Rule 56.1 Statement ¶¶ 54-55; J&A Rule 56.1 Statement ¶ 29.

According to Dobco, J&A ultimately acknowledged and agreed to the deductions reflected in Change Orders 20 and 21. Dobco Rule 56.1 Statement ¶ 57; see also Ex. Q to Mladenovic Decl. This left Change Order 22 in dispute.

J&A refused to execute the Final November Pay App. Dobco Rule 56.1 Statement ¶ 58; J&A Rule 56.1 Statement ¶ 31. J&A also did not provide Dobco with all of the documentation identified in the Application Procedure as a condition precedent to releasing payment to J&A, as required by the Subcontract. Dobco Rule 56.1 Statement ¶ 59.

On February 3, 2021, J&A prepared its own, alternative version of the Final November Pay App (the "Alternative Pay App"; together with the November Pay App, the Revised November Pay App, and the Final November Pay App, the "November 2020 Pay Apps"), which reflected the deductions set forth in Change Orders 20 and 21 but excluded the deduction outlined in Change Order 22. Id. ¶ 60. Dobco asserts that, two weeks later, it rejected J&A's Alternative Pay App, and instead advised J&A that J&A needed to execute Dobco's previously issued Final November Pay App before Dobco would process payment. Id. ¶¶ 61-62.

The parties offer different accounts of why J&A refused to execute the Final November Pay App. According to J&A, the change orders constituted Modifications of the Subcontract as defined in section 5.1, which Dobco should have referred to the Project Architect or Owner for resolution. J&A Rule 56.1 Statement ¶¶ 31, 33-34, 40. Instead, J&A claims, Dobco unilaterally issued the change orders and conditioned payment to J&A on J&A's agreement to sign, notarize, and certify as correct payment

9

applications that included the disputed change orders. Id.
¶¶ 27, 30, 36, 40. J&A's stated basis for refusing to execute
the Final November Pay App was its purported concern that it
might waive its objection to Change Order 22. Dobco Rule 56.1
Statement ¶ 63.

According to Dobco, however, when executing prior payment
applications, J&A had expressly reserved its right to challenge
disputes related to change orders. Id. ¶ 64. But J&A nonetheless
refused to execute the Final November Pay App, even with a
waiver containing the same or similar reservation language that
J&A had used in executing prior payment applications. Id. ¶ 66.
Without an executed Final November Pay App and the accompanying
documents listed in the Application Procedure, Dobco did not
issue payment to J&A. Id. ¶ 70.

On February 3, 2021, Dobco received from the Owner payment
of $110,105 for work covered by the November 2020 Pay Apps. See
J&A Rule 56.1 Statement ¶ 61. J&A asserts that this payment was
for work that J&A had performed under the Subcontract. Id. Dobco
never paid J&A the money that Dobco received from the Owner. Id.
¶ 63.

On June 4, 2021, J&A advised Dobco that J&A was terminating
the Subcontract pursuant to section 7.1 as a result of Dobco's
alleged failure to pay J&A amounts due under the Subcontract.
Id. ¶ 64; Dobco Rule 56.1 Statement ¶¶ 82-84. Dobco disputes

that payment was due to J&A at that time. See Dobco Rule 56.1 Statement ¶¶ 85-86.

On June 9, 2021, Dobco issued a Notice of Default to J&A, citing J&A's abandonment of the Project and J&A's refusal to perform further work under the Subcontract. Id. ¶ 87. J&A refused to perform in response to the Notice of Default. Id. ¶ 88. Dobco then issued a seven-day notice of intent to terminate the Subcontract. Id. ¶ 89. J&A again refused to perform. Id. ¶¶ 90-92. By letter dated July 15, 2021 (the "Termination Notice"), Dobco terminated the Subcontract with J&A based on J&A's abandonment of the project. Id. ¶ 93.

## c.

Dobco alleges that there was a second dispute between Dobco and J&A about the scope of work under the Subcontract around this time (the "Foundation Wall Dispute"). On October 10, 2020, Dobco purportedly advised J&A that the Owner had not approved all of J&A's work on installing the foundation wall, although Dobco had previously (and incorrectly) approved 100% of the pay amount for the foundation wall work listed on J&A's prior payment applications. Id. ¶¶ 37-39. Dobco alleges that the Owner had withheld 8% of the scheduled value due to Dobco under the Contract until patching of the foundation wall was completed. Id. ¶ 39. Dobco informed J&A in an October 10, 2020 email that Dobco would withhold that 8%, amounting to $37,120, from J&A's

11

pending requisition until the patching work was completed and accepted by the Owner. Id. ¶ 40. Dobco claims, however, that it inadvertently failed to include this $37,120 amount as a credit against the amounts due to J&A under the Final November Pay App, and that, after applying the $37,120 withholding, the total amount to be deducted from payment due to J&A actually exceeded the money due to J&A under the Final November Pay App. Id. ¶¶ 85-86.

According to Dobco, as of June 4, 2021—the date on which J&A purported to terminate the Subcontract—J&A had not completed the patching of the foundation wall. Id. ¶¶ 41-42. Dobco ultimately found other contractors to complete the patching of the foundation wall. Id. ¶ 43.

### D.

In February 2018, Arch, as co-surety with Liberty Mutual Insurance Company ("Liberty"), issued a payment bond (the "Payment Bond") in connection with the Project, on behalf of Dobco as principal and in favor of the Owner as obligee. Id. ¶ 36; J&A Rule 56.1 Statement ¶ 2; Arch Rule 56.1 Statement ¶ 53, ECF No. 112. The Payment Bond guaranteed, among other things, payment of "all lawful claims" of subcontractors who provided Dobco with labor and materials for the Project. J&A Rule 56.1 Statement ¶ 2; see also Payment Bond at 108, Ex. 1 to Tucker Decl., ECF No. 121-1. Under an agreement between Arch and

Liberty, Liberty served as the lead surety and had the sole authority to resolve claims on behalf of Liberty and Arch. Arch Rule 56.1 Statement ¶¶ 54-55.

On June 30, 2021, J&A made a claim on the Payment Bond in connection its payment dispute with Dobco for $1,943,440.02 (the "Payment Bond Claim"). Id. ¶ 57; Dobco Rule 56.1 Statement ¶ 95; J&A Rule 56.1 Statement ¶ 67. Liberty retained a consulting firm, J.S. Held, to perform an independent investigation of the Payment Bond Claim. Arch Rule 56.1 Statement ¶ 58; Dobco Rule 56.1 Statement ¶ 96. This investigation indicated that "J&A's termination of the Subcontract on June 4, 2021, appears to have been improper as no funds were due to J&A for 60 days or more on that date." Dobco Rule 56.1 Statement ¶ 99; see also Ex. 8 to Trif Decl. at -422, ECF No. 118-8. On July 26, 2021, Liberty denied the Payment Bond Claim. Arch Rule 56.1 Statement ¶ 59.

On June 8, 2021, pursuant to the New York Lien Law, J&A filed with the New York City Department of Design and Construction and the New York City Department of Finance a Notice of Mechanic's Lien, claiming a lien against the Project in the sum of $448,092.50 (the "Mechanic's Lien"). J&A Rule 56.1 Statement ¶ 68. On July 15, 2021, Arch and Liberty issued a Mechanic's Lien Discharge Bond on behalf of Dobco, discharging the Mechanic's Lien against the Project's contract funds and

13

substituting the bond as a guarantee of payment for the amounts claimed in the Mechanic's Lien. Id. ¶ 69.

**E.**

In March 2014, as a condition to Arch's issuing surety bonds on J&A's behalf, J&A and the Indemnitors entered into a General Indemnity Agreement (the "GIA") in favor of and for the benefit of Arch. Arch Rule 56.1 Statement ¶ 2.

Pursuant to the GIA, J&A and the Indemnitors jointly and severally agreed to:

> exonerate, indemnify and keep indemnified the Surety [namely, Arch] from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement (2) By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement or Other Agreements. In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

14

Id. ¶ 22 (quoting GIA § 3, Ex. A to Wagner Decl., ECF No. 129-1). The GIA defined "[l]oss" as:

> Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing or procuring any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a.) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for Principal or Indemnitors, (d.) funds advanced by Surety to a Principal, and (e.) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

Id. ¶ 23 (quoting GIA § 1.h).

The GIA granted Arch the "sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid . . . , and Surety's decision thereon shall be final and binding upon the Indemnitors." Id. ¶ 25 (quoting GIA § 8).

As a condition of the Subcontract, J&A was required to obtain a performance bond running to Dobco's benefit that guaranteed the performance of J&A's work under the Subcontract. Id. ¶ 28. On July 23, 2018, Arch, as surety, issued the required

15

bond (the "Performance Bond") in the penal sum of $3,900,000, on behalf of J&A, as principal, and in favor of Dobco, as obligee. Id. ¶ 29; Dobco Rule 56.1 Statement ¶ 35; J&A Rule 56.1 Statement ¶ 66; see also Performance Bond, Ex. G to Wagner Decl., ECF No. 110-7.

In Dobco's July 15, 2021 Termination Notice, Dobco made a claim against the Performance Bond, demanding that Arch perform pursuant to section 4 of the Performance Bond. Dobco Rule 56.1 Statement ¶ 94; Arch Rule 56.1 Statement ¶ 32. Section 4 provided:

> 4. Upon declaration by the Obligee of a Principal Default . . . , the Surety shall promptly and at the Surety's expense take one of the following actions, subject to the consent of the Obligee:
>
> > 4.1 Arrange for the Principal to perform and complete the Subcontract; or
> >
> > 4.2 Undertake to perform and complete the Subcontract itself, through its agents or through independent contractors, provided the Obligee has agreed to pay the Balance of the Contract Price . . . to the Surety, its agents or independent contractors . . . ; or
> >
> > 4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Obligee for performance and completion of the Subcontract in accordance with its terms, and arrange for a contract to be prepared for execution by the Obligee and the Contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Subcontract.

Id. ¶ 38 (quoting Performance Bond § 4).

16

Arch's obligation under the Performance Bond arose "immediately after [Dobco] has declared a Principal Default." Arch Rule 56.1 Statement ¶ 35 (quoting Performance Bond § 3). "Principal Default" was defined as the "[f]ailure of [J&A], which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Subcontract." Performance Bond § 11.2. The Performance Bond required Arch to respond to Dobco's claim within five days. Arch Rule 56.1 Statement ¶ 34 (citing Performance Bond § 5).

Arch conducted an independent investigation of Dobco's Performance Bond claim. Id. ¶ 33; Dobco Rule 56.1 Statement ¶ 101.

In response to Dobco's claim against the Performance Bond, Arch first attempted to arrange for J&A to perform pursuant to section 4.1. Arch Rule 56.1 Statement ¶ 39. Arch asked J&A to return to the Project and complete the remaining work on the Subcontract, and Dobco agreed to withdraw its termination of the Subcontract so that J&A could complete the remaining work on the Subcontract. Id. ¶¶ 40-41. However, J&A refused to rescind its putative termination of the Subcontract, and insisted that, if J&A were to return to the Project, J&A would need to receive a new contract held by Arch. Id. ¶¶ 42-43.

Arch then attempted to perform under section 4.3 of the Performance Bond and hired a consultant, Beacon Consulting

17

Services, Inc. ("Beacon"), to help find a replacement contractor to tender to Dobco. Id. ¶¶ 44-45. But Arch was unable to find an acceptable replacement contractor who would complete the work within the penal sum of the Performance Bond. Id. ¶ 46.

Ultimately, Dobco arranged to perform and complete the remaining work on the Subcontract itself. Id. ¶ 47. In February 2022, Arch agreed to pay Dobco $3,900,000, the penal sum of the Performance Bond, to settle Dobco's claim against the Performance Bond. Id. ¶ 48; Dobco Rule 56.1 Statement ¶ 103.

In addition to the $3,900,000 that Arch paid to Dobco, Arch paid $125,752.29 to Beacon. Arch Rule 56.1 Statement ¶¶ 49-50. Arch has also incurred attorneys' fees and related litigation expenses because of the Performance Bond claim and this litigation. Id. ¶ 51. To date, J&A and the Indemnitors have failed to provide Arch with indemnity as required under the GIA. Id. ¶ 52.

**F.**

In its Amended Complaint, J&A asserted ten claims: (1) First Cause of Action: foreclosure of the Mechanic's Lien against Arch; (2) Second Cause of Action: breach of contract against Dobco; (3) Third Cause of Action: quantum meruit against Dobco; (4) Fourth Cause of Action: unjust enrichment against Dobco; (5) Fifth Cause of Action: violation of the Prompt Payment Act against Dobco; (6) Sixth Cause of Action: diversion

18

of construction trust funds against Dobco; (7) Seventh Cause of Action: violation of the Payment Bond against Arch; (8) Eighth Cause of Action: bad faith against Arch; (9) Ninth Cause of Action: breach of the Performance Bond against Arch; and (10) Tenth Cause of Action: declaratory judgment against Dobco and Arch. See id. ¶¶ 34-134.

Dobco asserted breach of contract and declaratory judgment counterclaims against J&A, and a declaratory judgment crossclaim against Arch. See Dobco's Am. Counterclaim & Cross-Claim, ECF No. 64.

Arch asserted counterclaims against J&A and the Indemnitors, and a crossclaim against Dobco. See Arch's Counterclaim & Crossclaim, ECF No. 69. The Indemnitors responded with a counterclaim against Arch for bad faith. See Indemnitors' Counterclaim at 18-19, ECF No. 73.

J&A has moved for summary judgment on five of the ten claims that J&A has asserted against Dobco and Arch. Dobco, meanwhile, seeks summary judgment dismissing J&A's breach of contract and equitable claims and entering judgment against J&A on Dobco's counterclaims as to liability only.[2]

---

[2] Arch originally moved for summary judgment on its counterclaims against J&A and the Indemnitors and dismissing three of J&A's claims and the Indemnitors' counterclaim against Arch. See ECF No. 109. On February 21, 2025, the Court was informed that Arch and J&A had reached a settlement with respect to all matters between the two parties except for J&A's First and Seventh Causes of Action: J&A's claims against Arch seeking foreclosure of the Mechanic's Lien and alleging breach of the Payment Bond, respectively. See ECF No. 152.

**II.**

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[3] The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

Accordingly, Arch has withdrawn its motion for summary judgment, ECF No. 109, in full, and J&A has withdrawn its motion for summary judgment insofar as J&A sought a declaratory judgment against Arch in J&A's Tenth Cause of Action, ECF No. 115.

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

If there are cross-motions for summary judgment, the Court must assess each of the motions and, drawing all reasonable inferences against the party whose motion is under consideration, determine whether either party is entitled to judgment as a matter of law. See Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010).

All parties agree that the claims in this case are governed by New York law, and the Court can accept that agreement. See Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 152 (2d Cir. 2016)

("In a diversity case such as this one, the choice-of-law rules of New York, the forum state, govern. . . . Under New York choice-of-law rules, where the parties agree that a certain jurisdiction's law controls, this is sufficient to establish choice of law.").

### III.

J&A moves for summary judgment on its breach of contract claim against Dobco, its claim against Arch seeking foreclosure of J&A's mechanic's lien, its claim against Dobco asserting a violation of the New York Prompt Payment Act, its claim against Arch alleging breach of the Payment Bond, and its request for a declaratory judgment against Dobco.

### A.

For J&A to obtain summary judgment against Dobco on J&A's breach of contract claim, J&A must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)

With respect to this claim, J&A argues that Dobco breached the Subcontract when (1) Dobco unilaterally issued the disputed change orders in connection with the November 2020 Pay Apps and (2) failed to pay J&A promptly when Dobco received payment from the Owner, in accordance with section 11.1.3 of the Subcontract. Dobco disputes that it breached the terms of the Subcontract.

22

Under New York law, "[t]o determine the terms of a contract
a court must ascertain the parties' intent based on the language
they used." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d
568, 573 (2d Cir. 1993). "When the question is a contract's
proper construction, summary judgment may be granted when its
words convey a definite and precise meaning absent any
ambiguity." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d
425, 428 (2d Cir. 1992).

Whether a contract's terms are ambiguous is a question of
law for the court. Law Debenture Trust, 595 F.3d at 465–66
(collecting cases). Contract terms are unambiguous where they
provide "a definite and precise meaning, unattended by danger of
misconception in the purport of the contract itself, and
concerning which there is no reasonable basis for a difference
of opinion." Seiden, 959 F.2d at 428. Where, on the other hand,
contract terms are "capable of more than one meaning when viewed
objectively by a reasonably intelligent person who has examined
the context of the entire integrated agreement and who is
cognizant of the customs, practices, usages and terminology as
generally understood in the particular trade or business," the
contract terms are ambiguous. Id.

Under J&A's urged reading of section 5.1 of the
Subcontract, Dobco breached the Subcontract because Dobco was
required to submit disputed change orders to the Architect or

23

Owner, but Dobco failed to do so with Change Orders 20, 21, or 22.[4] Dobco, on the other hand, contends that section 5.1 was not applicable to Change Order 22 at all, because Change Order 22, in Dobco's view, did not "make changes, modifications, additions and/or omissions in the [Subcontract] Work." Subcontract at 11. Rather, Dobco argues that the Embed Work was within J&A's scope of work under the Subcontract to begin with, and therefore Change Order 22 merely documented an offset against payment due to J&A after J&A refused to perform the Embed Work as required. Thus, Dobco claims that, in issuing Change Order 22, it was under no obligation to follow the procedures outlined in section 5.1.

There is a genuine dispute of fact as to whether the Subcontract required J&A to perform the Embed Work. Section 8.1.5 of the Subcontract required J&A to "install all required embedded material supplied by others including but not limited to; anchor bolts, base plates, sleeves, etc. in accordance with the Subcontract Documents including, but not limited to, plans, specifications, and addenda." Subcontract at 16. It is unclear from the record whether the work that J&A claims was outside the scope of the Subcontract—namely, the placement of embeds that

---

[4] It is undisputed that J&A ultimately accepted Change Orders 20 and 21. See Dobco Rule 56.1 Statement ¶ 57; see also Ex. Q to Mladenovic Decl., ECF No. 117-22. Therefore, this Memorandum Opinion and Order focuses on Change Order 22.

required welding and/or cutting steel, and the placement of
embeds located outside the installed concrete formwork—was
consistent "with the Subcontract Documents including, but not
limited to, plans, specifications, and addenda." Id. Dobco
claims that relevant drawings in the Project specifications
reflect that J&A was responsible for the Embed Work, but J&A
denies that those drawings show that the installation of steel
embeds was within the scope of the Subcontract or, more
generally, the obligations of a concrete subcontractor like J&A.
See Dobco Rule 56.1 Statement ¶¶ 25-34; J&A Counterstatement of
Material Facts ¶¶ 25-34, ECF No. 135-1. J&A's corporate
representative, Antonio Martins, testified that the "contract
documents do not show . . . embeds that are welded on structural
steel members, which, in turn, have to be modified in order to
accept the embeds. . . . J&A is not qualified to do that work,
and none of that work is consistent with any of the scope and/or
the drawings that are shown for the project." Ex. 1 to Trif
Decl. at 118-119, ECF No. 118-1. In short, the Subcontract—and
other documents incorporated therein—are ambiguous as to whether
the Embed Work was within J&A's original scope of work. Based on
this record, a reasonable factfinder could conclude that the
dispute over the Embed Work constituted a disputed Modification
under section 5.1.

Nevertheless, Dobco argues that the core dispute regarding Change Order 22—whether the Embed Work was within J&A's scope of work under the Subcontract—was not an issue that needed to be referred to the Architect or Owner under section 5.1. Dobco contends that section 5.1 provided that disputes would be referred to the Architect or the Owner for "determination of the value of the Work" only if the parties were "unable to agree to the value of the Modification." Subcontract at 12 (emphasis added). In other words, section 5.1 contemplated referral of a dispute to the Architect or the Owner only when the "value" of a particular "Modification" was in dispute, not when the parties were unable to agree on whether certain work fell within the scope of the Subcontract specifications and thus constituted a "Modification" at all.

The Embed Work dispute concerned whether the Embed Work was a Modification in the first place, not what the proper value of the Embed Work should be. J&A insisted steadfastly that the Embed Work was not covered by the original Project Specifications. This was not a situation where J&A thought that the Embed Work should be valued at one amount and Dobco thought it should be valued at another. J&A simply refused to consider doing the Embed Work at all. Thus, under the unambiguous language of section 5.1, the dispute over Change Order 22 was

not a dispute that Dobco was required to submit to the Architect or Owner pursuant to section 5.1.

Moreover, the Subcontract expressly granted to Dobco the authority to make Modifications as it deemed necessary. Section 5.1 provided: "The Contractor reserves the right . . . to make changes, modifications, additions and/or omissions in the Work as it may deem necessary . . . ." Subcontract at 11. Even assuming that the Embed Work was not originally J&A's responsibility under the Subcontract, Dobco was within its rights to change the scope of work as it did. To the extent that J&A objected to the purported expansion of its scope of work, J&A was not without recourse: J&A could have submitted any such dispute to mediation—and then pursued arbitration or litigation, if necessary—pursuant to section 6.1. Therefore, Dobco did not breach section 5.1.

J&A further asserts that Dobco breached the Subcontract by improperly withholding payment for work that J&A had performed. According to J&A, section 11.1.3 required Dobco to pay J&A a progress payment in connection with the November 2020 Pay Apps "no later than seven (7) business days" after February 3, 2021, the date on which Dobco received payment of $110,115 from the Owner for work completed by J&A. Dobco rejects this claim, arguing instead that J&A was not entitled to receive payment until J&A fulfilled all of the conditions precedent to payment—

27

namely, executing the Final November Pay App and submitting the supporting documentation set forth in the Application Procedure.

As a threshold matter, section 11.1.3 required Dobco to pay J&A each progress payment "no later than seven (7) business days after the Contractor [Dobco] receives payment from the Owner <u>unless the Contractor asserts any offset or claim to such payments otherwise to be made to the Subcontractor</u>." Subcontract at 17 (emphasis added). Through Change Order 22, Dobco asserted an "offset or claim" to the payment otherwise due to J&A, and therefore its obligation to make a progress payment to J&A under section 11.1.3 was not triggered.

Furthermore, under New York law, parties to a contract must comply strictly with conditions precedent. <u>See</u> <u>Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.</u>, 660 N.E.2d 415, 418–19 (N.Y. 1995) ("The flexible concept of substantial compliance stands in sharp contrast to the requirement of strict compliance that protects a party that has taken the precaution of making its duty expressly conditional."); <u>Mezzacappa Bros., Inc. v. City of New York</u>, 815 N.Y.S.2d 549, 550 (App. Div. 2006) ("Where the parties to a contract have made an event a condition of their agreement, there must be strict compliance.").

It is undisputed that J&A failed to execute the Final November Pay App and to provide Dobco with all the supporting documentation set forth in the Application Procedure, which was

28

incorporated by reference into the Subcontract. The Application Procedure provided: "After [J&A] receives approval, original executed copy of the Application for Payment shall be submitted to [Dobco] with the [specified] attachments." Application Procedure, Ex. E to Mladenovic Decl. These attachments included, for example, the "Application and Certificate for Payment AIA G702 and AIA G703 executed and notarized," a "[l]ist of lower-tier Sub-subcontractors and vendors," the "Subcontractor's executed and notarized Partial Release, Waiver and Subcontractor's Affidavit of Payment," and a copy of the Subcontractor's and any sub-subcontractors' "current certificates of liability insurances." Id. Therefore, payment to J&A was not required until J&A fulfilled the conditions precedent to processing payment. See, e.g., Laur & Mack Contract. Co., Inc. v. Di Cienzo, 710 N.Y.S.2d 828 (Mem) (App. Div. 2000) (granting the defendants' motion for summary judgment dismissing the complaint where, although the plaintiff claimed that it was entitled to final payment of the amount due pursuant to the contract, it was undisputed that the third-party defendant had not issued a certificate of completion and that issuance of such certificate was a contractual condition precedent to payment).

Section 11.1.9 of the Subcontract also supports Dobco's position. Section 11.1.9 required Dobco to provide notice to J&A

29

of Dobco's disapproval of any application for payment submitted by J&A, and stated that, "[w]hen the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld." Consistent with section 11.1.9, Dobco rejected J&A's Alternative Pay App and requested that J&A execute the Final November Pay App and submit the contractually required supporting documents in order to receive payment. Because J&A failed to "remed[y]" this "basis for the disapproval," Dobco continued to withhold payment and was entitled to do so. Subcontract at 19.

J&A's stated concern—that, by executing the Final November Pay App, it might waive its right to challenge Change Order 22 later—is without merit. Paragraph 3 of the Partial Release, Waiver and Subcontractor's Affidavit of Payment (the "Partial Release"), one of the supporting documents to be submitted by J&A alongside the executed Final November Pay App, permitted J&A to accept payment while still reserving its right to challenge any disputed offsets or other claims. See Final November Pay App at -278, Ex. 15 to Tucker Decl., ECF No. 121-15. Specifically, paragraph 3 of the Partial Release provided:

> The Subcontractor has no claims or extra charges, as a result of work performed during the period covered by the accompanying requisition except for the following:
>
> [blank space]

> The Subcontractor acknowledges that any claims of extra charges for, or as a result of work performed during the period covered by the accompanying requisition <u>and not disclosed herein</u> are irrevocably waived by the Subcontractor.

<u>Id.</u> (emphasis added). In addition, when executing and returning previous payment applications, J&A had consistently used paragraph 3 of the Partial Release to reserve its right to challenge disputed offsets and change orders. <u>See</u> Dobco Rule 56.1 Statement ¶ 64. J&A simply refused to do so for Change Order 22.

While Dobco did not breach the Subcontract, J&A did breach the Subcontract: J&A's purported termination of the Subcontract pursuant to section 7.1 and abandonment of the Project constituted a breach of the Subcontract. Section 7.1, in relevant part, allowed J&A to terminate the Subcontract "for nonpayment of amounts due under this Subcontract for 60 days or longer." Because J&A did not satisfy the conditions precedent to payment in connection with the November 2020 Pay Apps, payment had not yet become "due" by June 4, 2021, the date on which J&A purported to terminate the Subcontract—let alone "due . . . for 60 days or longer." Subcontract at 13. And because J&A improperly terminated the Subcontract, it cannot invoke section 7.1's provision to recover from Dobco "payment for Work executed and for proven loss with respect to materials, equipment, tools and construction equipment and machinery, including reasonable

31

overhead, profit and damages," which applies only "[i]n the event of such termination by [J&A] which is not the fault of [J&A]." Id.

For these reasons, J&A's motion for summary judgment on its breach of contract claim against Dobco is **denied.**

**B.**

J&A seeks a judgment of foreclosure on its Mechanic's Lien against Arch. As an initial matter, for the reasons explained above, J&A has not shown that it is owed the amounts claimed in the Mechanic's Lien. Moreover, J&A's failure to establish that it timely filed a notice of pendency is fatal to its foreclosure claim.

Lien Law § 18 concerns the duration of liens "for labor done or materials furnished for a public improvement" and applies to "liens discharged by deposit or by order on the filing of an undertaking." Such a lien

> shall not continue for a longer period than one year from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien within that time, and a notice of the pendency of such action is filed with the comptroller of the state or the financial officer of the public corporation with whom the notice of such lien was filed.

N.Y. Lien Law § 18 (emphasis added). Filing a notice of pendency is "an indispensable requirement to the continuation of a lien," and therefore "the lack of any notice of pendency is a fatal omission." Penn Hydro, Inc. v. B.V.R. Constr. Co., Inc., 194

N.Y.S.3d 655, 659 (App. Div. 2023); see also, e.g., Kellett's Well Boring, Inc. v. City of New York, 739 N.Y.S.2d 136, 138 (App. Div. 2002). Put simply, a mechanic's lien for labor or materials for a public improvement expires one year after filing unless the conditions set forth in Lien Law § 18 are met. See Penn Hydro, 194 N.Y.S.3d at 659 ("If neither an extension to the lien nor a notice of pendency of an action to foreclose is filed within the statutory period, . . . then the lien automatically expires by operation of law, becoming a nullity and requiring its discharge.").

In this case, there is no evidence that J&A filed a notice of pendency, as required under Lien Law § 18. J&A filed its Notice of Mechanic's Lien on June 8, 2021. See Ex. 33 to Tucker Decl., ECF No. 121-33. This means that J&A's Mechanic's Lien would have expired after June 8, 2022, unless J&A satisfied the statutory requirements to continue the Mechanic's Lien. J&A commenced an action to foreclose on the Mechanic's Lien on October 29, 2021, in state court, thus satisfying one of Lien Law § 18's requirements. See Summons & Compl., Ex. 1 to Notice of Removal, ECF No. 1. However, there is no indication that J&A filed a notice of pendency, the second of Lien Law § 18's two requirements to continue a lien on a public improvement. Accordingly, J&A's Mechanic's Lien has expired. See Penn Hydro, 194 N.Y.S.3d at 659 ("Where . . . a plaintiff has timely

33

commenced an action, yet failed to timely file a notice of pendency, the lien expires as a matter of law.").

J&A argues that Lien Law § 18's notice of pendency requirement is inapplicable where, as in this case, a mechanic's lien has been discharged by a surety bond. According to J&A, "[w]hen a mechanic's lien is discharged by a surety bond, the lien is shifted to the bond and the filing of a notice of pendency is therefore unnecessary because the lien is deemed to be against the bond rather than the public project contract funds." See J&A Reply Mem. at 6, ECF No. 138 (citing Lien Law § 21(5)). But Lien Law § 21, on which J&A relies, addresses how a lien for public improvement may be discharged and says nothing about a notice of pendency becoming unnecessary in the event of a discharge. Indeed, a state court recently held that "the mere existence of a lien discharge bond does not negate a plaintiff's need to file a notice of pendency upon commencement of an action to foreclose a lien in connection with a public improvement project." R/J Florig Indus. Co. v. Hi Tech Steel, Inc., No. EF000365-2022, Op. at 10 (N.Y. Sup. Ct. Oct. 23, 2024).

In re Cavalry Constr., Inc., which J&A also cites in support of its position, stands only for the proposition that, once a bond discharging a lien for a public improvement is executed, "the state or public corporation . . . is no longer a necessary party in the lien foreclosure action." 496 B.R. 106,

122 (S.D.N.Y. 2013). In this case, by contrast, no public corporation is a party; the issue with which the court in Cavalry Construction dealt is not relevant on J&A's motion.

At bottom, the "clear mandatory language" of Lien Law § 18 is controlling. Kellett's Well Boring, 739 N.Y.S.2d at 138. J&A's contention that there is no notice of pendency requirement if the lien is discharged by a bond under Lien Law § 21(5) runs counter to the plain language of Lien Law § 18, which states that "[t]he provision of this section in regard to continuing liens shall apply to liens discharged by deposit or by order on the filing of an undertaking." Lien Law § 18 (emphasis added).[5] Therefore, J&A's motion for summary judgment on its Mechanic's Lien foreclosure claim is **denied.**

### C.

J&A contends that it is entitled to summary judgment on its Payment Bond claim against Arch. On this claim, J&A seeks judgment against Arch for at least $1,357,754, plus statutory interest and attorney's fees pursuant to State Finance Law ("SFL") § 137.

---

[5] Comparing the text of Lien Law § 18 to the text of Lien Law § 17, which applies to liens on private property, further underscores this point. Lien Law § 17 sets forth substantially the same requirements for continuing a lien past the one-year mark, but adds the following: "The provisions of this section in regard to continuing liens shall apply to liens discharged by deposit or by order on the filing of an undertaking. Where a lien is discharged by deposit or by order, a notice of pendency of action shall not be filed." Lien Law § 17 (emphasis added). Lien Law § 18, which applies to liens for work done for a public improvement such as the Project at issue in this case, contains no such language.

35

SFL § 137 requires the issuance of a labor and material payment bond on a public improvement project. See SFL § 137(1). The law "guarantee[s] prompt payment of moneys due to all persons furnishing labor or materials to the contractor or any subcontractors in the prosecution of the work provided for in such contract." Id. A party "who has furnished labor or material" to a contractor "in the prosecution of the work provided for in the contract and who has not been paid in full therefor . . . shall have the right to sue on such payment bond" for the unpaid amount. Id. § 137(3). In such an action, "any judgment in favor of a subcontractor . . . may include provision for the payment of interest upon the amount recovered from the date when demand for payment was made" pursuant to the bond. Id. § 137(4)(c). Further, "the court may determine and award reasonable attorney's fee to either party to such action when, upon reviewing the entire record, it appears that either the original claim or the defense interposed to such claim is without substantial basis in fact or law." Id.

The Payment Bond issued by Arch guaranteed payment of:

all lawful claims for

(a) Wages and compensation for labor performed and services rendered by all persons engaged in the prosecution of the Work under said Contract, and any amendment or extension thereof or addition thereto, whether such persons be agents[,] servants or employees of [Dobco] or any such Subcontractor, including all persons so engaged who perform the work of laborers or

36

> mechanics at or in the vicinity of the site of the Project . . . ; and
>
> (b) Materials and supplies . . . , as well as teams, fuels, oils, implements or machinery furnished, used or consumed by [Dobco] or any subcontractor at or in the vicinity of the site of the Project in the prosecution of the Work under said Contract and any amendment or extension thereof or addition thereto[.]

Payment Bond at 108–09, Ex. 1 to Tucker Decl.

J&A seeks payment of the damages that it claims to be entitled to pursuant to section 7.1 of Subcontract. In the event of J&A's termination of the Subcontract under section 7.1, J&A could "recover from [Dobco] payment for Work executed and for proven loss with respect to materials, equipment, tools and construction equipment and machinery, including reasonable overhead, profit and damages." Subcontract at 13. However, J&A is not entitled to payment of any of the damages that it claims under the Subcontract because, as explained above, J&A breached the Subcontract when J&A wrongfully terminated the Subcontract and abandoned the Project. By its terms, the Payment Bond guaranteed payment only of "all lawful claims" for labor and materials furnished or used in the Project. Payment Bond at 108–09 (emphasis added).

Accordingly, J&A's motion for summary judgment on its Payment Bond claim against Arch is **denied**.

37

**D.**

J&A moves for summary judgment on its declaratory judgment claim, which seeks a determination regarding J&A's obligations to Dobco under the Subcontract.

J&A's claim for declaratory relief is duplicative of its other asserted claims. "Courts generally reject a [declaratory judgment] claim when other claims in the suit will resolve the same issues." City of Perry v. Procter & Gamble Co., 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016). In evaluating J&A's breach of contract claim against Dobco, the Court will necessarily have to determine Dobco's contractual obligations to J&A under the Subcontract. Therefore, a declaratory judgment in this case would be "superfluous." Dolphin Direct Equity Partner, LP v. Interactive Motorsports & Enter. Corp., No. 08-cv-1558, 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009); see also, e.g., Culwick v. Wood, 384 F. Supp. 3d 328, 343 (E.D.N.Y. 2019) ("A declaratory judgment action cannot be maintained when it parallels the other claims and merely seeks a declaration of the same rights and obligations.").

In sum, J&A's summary judgment motion on five of its claims—foreclosure of mechanic's lien, breach of contract,

prompt payment,[6] payment bond, and declaratory judgment—is

**denied**.[7]

**IV.**

Dobco moves for summary judgment dismissing the breach of

contract and equitable claims asserted against it by J&A and

entering judgment on Dobco's counterclaims against J&A on

liability only.

J&A asserted claims against Dobco for breach of contract,

quantum meruit, unjust enrichment, violation of the Prompt

Payment Act, diversion of construction trust funds, and

declaratory judgment.[8] Dobco counterclaimed for breach of

contract and declaratory judgment.

---

[6] J&A seeks summary judgment on its claim asserting that Dobco's failure to pay J&A's applications for payment in a timely manner violated the New York Prompt Payment Act. Am. Compl. ¶¶ 62-64. In its memorandum in support of its motion for summary judgment, however, J&A makes only two passing references to its Prompt Payment Act claim and fails to develop in any way its arguments pertaining to that claim. See J&A Mem. in Support of Mot. for Summary Judgment at 1, 11, ECF No. 116. Therefore, any arguments J&A might assert regarding its Prompt Payment Act claim are considered abandoned for purposes of its motion for summary judgment. See, e.g., Zhang v. Gonzales, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming "abandoned" the petitioner's argument about a claim where the petitioner "devote[d] only a single conclusory sentence" to that argument). In any event, because J&A failed to fulfill the conditions precedent to payment under the Subcontract and payment thus had not yet become due, J&A has not shown how it could prevail on its Prompt Payment Act claim.

[7] J&A's motion to strike certain expert reports submitted by Dobco is **denied** without prejudice to consideration on motions in limine in connection with the Joint Pre-Trial Order.

[8] Dobco has not moved for summary judgment dismissing J&A's Prompt Payment Act, diversion of construction trust funds, and declaratory judgment claims against it.

**A.**

J&A's breach of contract and equitable claims against Dobco must be dismissed. As explained above, J&A cannot establish that Dobco breached the Subcontract. Dobco was not required to submit Change Order 22 to the Architect or the Owner pursuant to section 5.1 of the Subcontract. Also, when J&A purported to terminate the Subcontract, Dobco's obligation to pay J&A under the November 2020 Pay App had not yet been triggered because J&A failed to execute the Final November Pay App and submit the required supporting documentation to Dobco. Therefore, J&A's purported termination of the Subcontract was a breach of the Subcontract. For the same reasons, J&A's claim against Dobco for violation of the Prompt Payment Act also fails.

J&A's quantum meruit and unjust enrichment claims are also without merit. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012). Similarly, "the existence of an express contract governing a particular subject matter ordinarily precludes recovery in quantum meruit for events arising out of the same subject matter." Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 262-63 (2d Cir. 1999) (citing Clark-Fitzpatrick, Inc. v. Long Island Railroad Co., 516 N.E.2d 190 (N.Y. 1987)). In this case, the Subcontract

indisputably governs J&A's and Dobco's claims against each other, and J&A's quasi-contract claims "rest on the same factual allegations as [its] contract claims." In re Columbia Tuition Refund Action, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021). Therefore, J&A is "limited to recovery of damages on the contract, and may not seek recovery based on an alleged quasi contract." Clark-Fitzpatrick, 516 N.E.2d at 193. And, for the reasons explained above, J&A has no claim for breach of contract against Dobco.

**B.**

Turning to Dobco's motion for summary judgment on its counterclaims against J&A, Dobco asserts that J&A materially breached the Subcontract by, among other things, abandoning the Project when J&A purported to terminate the Subcontract and refused to perform its remaining contractual obligations. Under the plain terms of the Subcontract, J&A's putative termination of the Subcontract under section 7.1 was a breach of the Subcontract because payment had not yet been due for 60 days or more. In addition, Dobco's termination of J&A was proper under section 7.1.1 of the Subcontract, which permitted Dobco to terminate the Subcontract if J&A failed to carry out the work in accordance with the Subcontract and failed "within seven calendar days after receipt of written notice to commence and continue correction of such default or neglect with diligence

41

and promptness." Dobco issued written notice of default to J&A on June 9, 2021. J&A refused to perform, and apparently still has not performed. Accordingly, Dobco is entitled to summary judgment on its breach of contract counterclaim against J&A as to liability only.

However, summary judgment on Dobco's declaratory judgment counterclaim is without merit because such a claim is duplicative. Dobco seeks a declaration that its termination of the Subcontract with J&A was proper. See Dobco's Am. Counterclaim & Cross-Claim ¶¶ 21-26. But this issue is one that the Court would resolve, and has resolved, in adjudicating Dobco's breach of contract claim.[9]

Dobco's motion for summary judgment dismissing J&A's breach of contract and equitable claims against it is **granted**. Dobco's motion for summary judgment on liability for its counterclaims against J&A is **granted** as to Dobco's breach of contract counterclaim and **denied** as to Dobco's declaratory judgment counterclaim.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments

---

[9] At oral argument, Dobco represented that it was seeking summary judgment on its declaratory judgment claim against Arch only. However, in its moving papers, Dobco does not address Dobco's declaratory judgment cross-claim against Arch.

are either moot or without merit. For the foregoing reasons,
J&A's motion for summary judgment is **denied,** and Dobco's motion
for summary judgment is **granted in part and denied in part**. The
Clerk is respectfully directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           February 24, 2025

                                        _____
                                             John G. Koeltl
                                        **United States District Judge**

43