UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

J&A CONCRETE CORP.,                          21-cv-11097 (JGK)

                            Plaintiff,       MEMORANDUM OPINION
                                             AND ORDER

        - against -

DOBCO, INC., ET AL.,

                            Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

        The plaintiff, J&A Concrete Corp., and its indemnitors (to-
gether, the "J&A Parties") move pursuant to Federal Rules of
Civil Procedure 15(a) and 16(b) to amend J&A's complaint. The
J&A Parties seek to add two causes of action against the defend-
ant, Dobco, Inc.: one for unjust enrichment and one for breach
of contract/recoupment.

        Dobco opposes this motion on three grounds. First, Dobco
contends that the J&A Parties cannot show good cause, as re-
quired by Rule 16(b)(4), because they supposedly could have
asserted their proposed claims before the deadline to amend the
pleadings but declined to do so for strategic reasons. Second,
Dobco argues that it would be unduly prejudiced by an amendment
to the pleadings at this late stage in the litigation. Finally,
Dobco asserts that adding the proposed claims would be futile.

For the following reasons, the J&A Parties' motion to amend is **denied**.

I.

A.

In March 2018, Dobco contracted with the New York City Department of Design and Construction to provide general-contractor construction services for the 40th Precinct Police Station. Decl. of Richard T. Tucker Supp. Pl.'s Mot. to Amend ("Tucker Decl."), ECF No. 175, Ex. 11 ¶ 25 ("Proposed Second Am. Compl."). Shortly afterward, Dobco entered into a subcontract (the "Subcontract") with J&A under which J&A agreed to perform certain concrete work in exchange for $3.9 million. Id. ¶¶ 23, 27.

One of the Subcontract's conditions was that J&A obtain a performance bond running to Dobco's benefit and guaranteeing the performance of J&A's work. Arch Insurance Company agreed to issue the required bond (the "Bond") in the penal sum of $3.9 million on behalf of J&A as principal and in favor of Dobco as obligee. Arch Rule 56.1 Statement ¶ 29, ECF No. 112; Dobco Rule 56.1 Statement ¶ 35, ECF No. 120; J&A Rule 56.1, ECF No. 116-1 ¶ 2. In exchange for Arch's issuing the Bond on J&A's behalf, the J&A Parties executed an indemnity agreement (the "Indemnity Agreement"), which required them to indemnify Arch if

2

Dobco successfully made a claim on the Bond. Decl. of Patricia A. Wager Supp. Arch's Mot. Summ. J., ECF No. 110, Ex. 5 ¶ 3.

By June 2021, the relationship between J&A and Dobco had deteriorated, and J&A informed Dobco that it was terminating the Subcontract. In J&A's view, Dobco had improperly failed to pay it for work J&A had performed. Proposed Second Am. Compl. ¶ 46. J&A refused to continue working on the project, and Dobco in turn terminated the Subcontract and made a claim on the Bond. Arch Rule 56.1 Statement ¶¶ 31-32.

J&A brought this action against Dobco and Arch in New York state court, and the defendants removed the action to this federal court. ECF No. 1. Dobco answered the complaint and brought counterclaims against J&A along with crossclaims against Arch. ECF No. 17. Arch also answered and brought counterclaims against J&A along with crossclaims against Dobco. ECF No. 18. The Court issued a scheduling order establishing October 31, 2022, as the deadline for the parties to seek leave to amend their pleadings. ECF No. 54.

With the Court's leave and the consent of the other parties, J&A filed an amended complaint in November 2022 asserting ten claims, including claims for breach of contract, quantum meruit, and unjust enrichment against Dobco; and claims for bad faith and breach of the Bond against Arch. ECF No. 63 ("First Am. Compl."). In support of its bad-faith claim, J&A alleged

that Arch's demand for collateral security in the amount of $3.9 million was excessive because the "remaining work on the Contract was only valued at $1,536,175." Id. ¶¶ 89, 96.[1] Dobco answered the amended complaint. Dobco also asserted breach-of-contract and declaratory-judgment counterclaims against J&A, and a declaratory-judgment crossclaim against Arch. ECF No. 64. Arch asserted its own counterclaims against J&A and crossclaims against Dobco. ECF No. 69.

In May 2024, J&A moved for summary judgment on five of its claims against Dobco and Arch. ECF Nos. 115, 116. Dobco, meanwhile, moved for summary judgment on its counterclaims against J&A on liability only and against J&A's breach-of-contract and equitable claims. ECF Nos. 114, 119. The Court ultimately (1) denied J&A's summary-judgment motion, (2) granted Dobco's summary-judgment motion dismissing J&A's breach-of-contract and equitable claims, (3) granted Dobco's summary-judgment motion on liability for its counterclaims against J&A, and (4) denied Dobco's summary-judgment motion on its declaratory-judgment counterclaim. ECF No. 153.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

**B.**

Before the Court issued its summary-judgment ruling, the parties reached two settlement agreements. The first, between Arch and Dobco, was executed in February 2022. Tucker Decl. Ex. 7 (the "Arch/Dobco Settlement Agreement"). The agreement provided that:

> After an independent investigation of the default termination, Arch procured completion bids for satisfaction of its Performance Bond obligations. After numerous unsuccessful attempts by Arch to perform under Sections 4.1 and 4.3 of the Performance Bond, Arch agreed to a financial settlement with Dobco based on its potential exposure to Dobco, ... which in total, by all estimates, exceeds the penal sum of the Performance Bond.

Id. Recital G. The agreement further provided that:

> 1. Arch hereby agrees to unconditionally pay Dobco the amount of $3,900,000 within thirty (30) days of the Effective Date (the "Arch Payment"), subject only to the limited reservation of rights set forth in paragraph 3 herein.
>
> ...
>
> 3. Arch is hereby discharging its obligations under the Performance Bond under an express reservation of rights relating to J&A's disputing the propriety of Dobco's termination of the Subcontract and contention that, prior thereto, J&A properly terminated the Subcontract due to Dobco's alleged breach thereof.

Id. ¶¶ 1, 3.

The second settlement, between Arch and the J&A Parties, was executed in March 2025. Tucker Decl. Ex. 8 (the "Arch/J&A Settlement Agreement"). According to that agreement, the J&A

Parties agreed to pay Arch $3.75 million to resolve their indem-
nification obligations arising out of the Bond in exchange for
being assigned Arch's rights against Dobco. Id. ¶¶ 3.0, 4.0.

### c.

On March 11, 2025 — the same day J&A and Arch informed the
Court that they had reached a settlement — the J&A Parties in-
formed the Court that they would seek permission to amend their
pleadings. ECF No. 158. After a conference with the Court, the
J&A Parties moved to amend the complaint to add two new claims
against Dobco: one for unjust enrichment and another for recoup-
ment. ECF Nos. 174, 175.

The proposed claims rest on related theories. The unjust-
enrichment theory starts with the premise that Dobco recovered
more from Arch than it ultimately spent to complete J&A's work
on the project. Under the Indemnity Agreement, the J&A Parties
are responsible for whatever Arch spent to settle Dobco's claim
on the Bond. The J&A Parties satisfied that obligation when they
paid Arch $3.75 million pursuant to the Arch/J&A Settlement
Agreement. The J&A Parties claim that they indirectly paid Dobco
that $3.75 million and now seek to claw back the difference be-
tween that amount and the amount Dobco allegedly spent to
complete J&A's work on the project, which they characterize as a
windfall for Dobco.

The recoupment theory also begins with the premise that Dobco recovered more from Arch than Dobco spent to complete J&A's work on the project. Arch assigned any residual rights it had against Dobco to the J&A Parties as part of the Arch/J&A Settlement Agreement. The J&A Parties now purport to exercise that residual right to recoup the difference between what Arch paid Dobco and what Dobco ultimately spent to complete J&A's work on the project.

## II.

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021).

First, "[a]t the outset of the litigation, a plaintiff may freely amend ... as of right without court permission." Id.

Second, "[a]fter that period ends — either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A) — the plaintiff must move the court for leave to amend, but the court should grant such leave freely when justice so requires." Id. "This is a liberal and permissive standard." Id. A district court may deny leave to amend only for "good reason," such as futility, bad faith, or undue prejudice to the opposing party.

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

Finally, "[t]he period of liberal amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted." Sacerdote, 9 F.4th at 115. At that point, the plaintiff may amend the complaint only upon a showing of good cause as required by Rule 16(b)(4). Id. The "primary consideration" in the Rule 16 good-cause in-quiry "is whether the moving party can demonstrate diligence." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). If the Court determines there is good cause for the amendment, it must still determine whether leave to amend is ap-propriate under Rule 15. Allgaier v. Peterson, No. 13-cv-5112, 2015 WL 5459808, at *4 (S.D.N.Y. Aug. 13, 2015). "Although the movant bears the burden of demonstrating good cause, the non-mo-vant must show why the Court should deny leave to amend on grounds of futility, bad faith, or undue prejudice." Id. at *5; see also Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith.").

Dobco opposes the J&A Parties' motion to amend for three reasons. First, because the J&A Parties seek leave to amend af-ter the October 31, 2022 deadline set by the Court, they must

show good cause, and they cannot do so because they strategically delayed bringing their new claims. Second, allowing the J&A Parties to add new claims now — after discovery has closed and the Court has ruled on the parties' summary-judgment motions — would unduly prejudice Dobco. And third, the J&A Parties' amendment would be futile because neither of their proposed claims is viable. The Court addresses each argument in turn.

### A.

Dobco argues first that the J&A Parties cannot show good cause because they were not diligent in seeking leave to amend their complaint. "[A] finding of good cause depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Ordinarily, "[t]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 735 (S.D.N.Y. 2012).

According to Dobco, that is the situation in this case. In Dobco's view, the J&A Parties have contended throughout this dispute that the remaining Subcontract work would cost less than the Bond's penal sum. Dobco notes, for example, that "the J&A Parties allege[d]" in the operative complaint "that Arch's $3.9 million collateral demand was excessive" because the "remaining

subcontract work" was worth "only $1,536,175." Def.'s Mem. Opp'n
Mot. to Amend ("Opp'n Mem.") 11, ECF No. 182 (citing First Am.
Compl. ¶¶ 89, 96). Thus, the J&A Parties not only knew of "the
factual allegation for their proposed new claim" — they "ac-
tively asserted" it. Id. "Yet, they never asserted an unjust
enrichment claim against Dobco, nor did they seek to preserve
such a claim."[2] Id.

This argument is unpersuasive. The J&A Parties' new
claims — if they are valid — arose only when the J&A Parties
signed the Arch/J&A Settlement Agreement in the spring of 2025.
The J&A Parties' unjust-enrichment claim seeks to recover money
Dobco received from Arch beyond the Subcontract completion
costs. But until the J&A Parties settled with Arch, they had no
claim against Dobco for any excess money Arch paid. Only after
the J&A Parties agreed to pay Arch could the J&A Parties sue
Dobco for the allegedly excessive sum Dobco received from Arch.

Dobco resists this conclusion by claiming that the Arch/J&A
Settlement Agreement "does not revive these long-known allega-
tions or excuse [the J&A Parties'] inaction." Opp'n Mem. 11. But
that misses the point. That the J&A Parties have long believed
the $3.9 million value of the Bond exceeded the cost required to

---

[2] J&A did bring an unjust-enrichment claim against Dobco. See First
Am. Compl. ¶¶ 58-61. But that claim targeted a different sum of
money — the $447,007.50 in labor and materials that J&A alleges it
provided Dobco.

complete the Subcontract says nothing about whether the J&A Parties could turn those beliefs into a ripe claim against Dobco. They could not. See Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) ("A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all."); see also Blue Angel Realty, Inc. v. United States, No. 20-cv-8220, 2022 WL 94599, at *9 (S.D.N.Y. Jan. 8, 2022) (finding that unjust enrichment claim was unripe because it was "premised on events that ha[d] not occurred and indeed may never occur").

Dobco's response makes even less sense when applied to the J&A Parties' recoupment claim, which belonged to Arch until the Arch/J&A Settlement Agreement. The J&A Parties could not have brought a claim that did not belong to them.

Because the J&A Parties could not have brought their proposed claims against Dobco until they entered into the Arch/J&A Settlement Agreement and because they sought leave to amend promptly, they have established good cause for seeking leave to amend.[3] See Allgaier, 2015 WL 5459808, at *5 (permitting amendment because the plaintiff "could not have reasonably moved for

---

[3] See ECF No. 163 (entering Arch/J&A Settlement Agreement on March 12, 2025), ECF No. 164 (ordering parties on March 13, 2025 to appear for a conference "in connection with the plaintiff's anticipated motion to amend"), and ECF No. 174 (moving to amend on April 7, 2025).

leave to amend to add the [proposed] claim before the deadline's expiration").

### B.

Dobco next argues that allowing the J&A Parties to amend the complaint would be unduly prejudicial given the late stage of the litigation. "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725–26 (2d Cir. 2010). The Court of Appeals for the Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the most important reasons to deny leave to amend." Id. at 725.

Dobco notes that "it has been over a year since the close of discovery and this matter is on the eve of trial." Opp'n Mem. 13. Dobco insists that it would need additional discovery into the Arch/J&A Settlement Agreement, including into "Arch's intentions and understanding of the scope of the assignment contained therein or Arch's intentions when executing" the settlement. Id. "[W]ithout this information, Dobco would be unable to adequately defend itself." Id.

This argument is also unpersuasive. "Mere delay ... absent a showing of bad faith or undue prejudice[] does not provide a

basis for a district court to deny the right to amend." Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 61 (E.D.N.Y. 2015). And any prejudice to Dobco would be minimal. The J&A Parties note — and Dobco does not dispute — that nearly all the evidence bearing on the cost to complete the Subcontract is already in the record. Pl.'s Reply Supp. Mot. to Amend ("Reply") 4, ECF No. 184 (citing Tucker Decl. Exs. 2, 3, & 7). And the new discovery Dobco claims it needs into the Arch/J&A Settlement Agreement is limited. "Given that the new claims arise from the original transaction," any need for new discovery "should be minimal." Yador v. Mowatt, No. 19-cv-4128, 2022 WL 4472630, at *4 (E.D.N.Y. June 13, 2022); see also State Teacher's Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (leave to amend was not prejudicial because it would "not involve a great deal of additional discovery").

## c.

Finally, Dobco argues that amendment would be futile because the two claims the J&A Parties seek to add are legally "unsustainable." Opp'n Mem. 14, 16. "Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy, 626 F.3d at 726.

At this stage in the litigation, the Court applies a summary-judgment standard to evaluate the futility of proposed amendments to the pleadings. "Although courts generally examine

the futility of an amendment under the Federal Rule of Civil Procedure 12(b)(6) standard," when, as in this case, a party moves to amend "after the close of discovery and after decision on summary judgment," the Court may apply the standard it would use in evaluating a motion for summary judgment. Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 193 (E.D.N.Y. 2013); see also Summit Health Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014) ("Ordinarily, leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss. However, when the motion to amend is filed after the close of discovery and the relevant evidence is before the court, a summary judgment standard will be applied instead."), aff'd sub nom., APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc., 725 F. App'x 4 (2d Cir. 2018).

The Court will address the proposed unjust-enrichment claim first followed by the proposed recoupment claim.

### 1.

To state a claim for unjust enrichment under New York law, a plaintiff must adequately allege that "(1) the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006). However, "[t]he existence of a valid and

enforceable written contract governing a particular subject matter ordinarily precludes recovery [for unjust enrichment] for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 516 N.E.2d 190, 193 (N.Y. 1987).

The J&A Parties contend that Dobco unjustly enriched itself at their expense. In their view, Dobco received a windfall when Arch agreed to settle Dobco's claim on the Bond for $3.9 million because Dobco allegedly spent far less than that amount to replace J&A on the project.[4] Proposed Second Am. Compl. ¶ 106. And that windfall allegedly came at the J&A Parties' expense when

---

[4] The J&A Parties contend that the total cost to complete the Subcontract was $5,939,939.48, Proposed Second Am. Compl. ¶ 104, but by the time Dobco terminated J&A, Dobco had already contributed $4,550,962.87 worth of work to the project. The J&A Parties calculated that sum by adding the amount Dobco paid J&A ($4,103,954.87) plus the amount J&A claims Dobco should have paid it for additional work ($447,008.00). Id. ¶ 103. $5,939,939.48 (the total cost) minus $4,550,962.87 (the value J&A provided) equals $1,388,976.61 — the amount the J&A Parties claim it truly cost to replace J&A. Thus "[w]hen Arch made the $3,900,000.00 payment to Dobco for the purposes of completing the performance of the Subcontract, Dobco received a windfall overpayment of at least $2,511,023.39 in excess of the actual costs to complete the work of the Subcontract" — the difference between $3.9 million and $1,388,976.61. Id. ¶ 106. While Dobco did not seek to raise a factual issue in its response to the current motion, at argument, Dobco pointed out that Arch settled with Dobco for $3.9 million only after it was unable to complete the project for that amount. Moreover, according to Dobco, The J&A Parties' calculations do not include various other expenses needed to complete the project, such as delay costs.

the J&A Parties agreed to indemnify Arch for $3.75 million of that $3.9 million.

This proposed unjust-enrichment claim is futile, however, because it is squarely governed by the Indemnity Agreement between Arch and the J&A Parties, which expressly authorized Arch to pay Dobco up to the full penal sum of the Bond:

> 8. [Arch] shall have the sole and exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against [Arch] on any Bond shall or shall not be paid, compromised, resisted, defended, tried, or appealed, and [Arch]'s decision shall be final and binding upon the Indemnitors.

Indemnity Agreement ¶ 8

Arch then did exactly that: it "agreed to a financial settlement with Dobco based on its potential exposure to Dobco based upon the completion bids procured by Arch, plus addition exposure costs, ... all of which, by all estimates, exceeds the penal sum of the Performance Bond." Arch/Dobco Settlement Agreement, Recital G. And the J&A Parties expressly agreed to indemnify Arch for any losses suffered by Arch up to the penal sum of the Bond. Indemnity Agreement ¶ 3.

The J&A Parties attempt to avoid this difficulty by characterizing their claim as one against Dobco. But changing the defendant does not transform the essence of the claim. The J&A Parties plainly authorized Arch, as the surety, to pay Dobco up to $3.9 million to settle claims on the Bond. "Sureties enjoy

such discretion to settle claims because of the important func-
tion they serve in the construction industry, and because the
economic incentives motivating them are a sufficient safeguard
against payment of invalid claims." Gen. Acc. Ins. of Am. v.
Merritt-Meridian Constr. Corp., 975 F. Supp. 511, 516 (S.D.N.Y.
1997). Arch then had the right under the Indemnity Agreement to
recover from the J&A Parties the full value of any settlement
Arch made on the Bond.

Because the Indemnity Agreement governs whether the J&A
Parties are responsible for the amount Arch chose to settle
Dobco's claim on the Bond, the J&A Parties cannot bring an
unjust-enrichment claim to recover that money. Amending the
complaint to add the proposed unjust-enrichment claim against
Dobco would therefore be futile.

**2.**

The J&A Parties also seek to add a claim for "breach of
contract/recoupment." Proposed Second Am. Compl. 19. The theory
is that the Arch/J&A Settlement Agreement assigned Arch's cross-
claim against Dobco to the J&A Parties; that Arch's settlement
with Dobco expressly reserved Arch's "rights relating to J&A's
disputing the propriety of Dobco's termination of the Subcon-
tract," Arch/Dobco Settlement Agreement ¶ 3; and that "the
'propriety' of Dobco's termination necessarily includes the
scope of damages that Dobco is allowed to recover under the

Subcontract," Pl.'s Br. Supp. Mot. to Amend 13. According to the J&A Parties, Dobco could not recover from Arch more than the cost of performance, which the J&A Parties allege is far less than the $3.9 million Arch paid to Dobco.

The Arch/Dobco Settlement agreement provides that Arch discharged

> its obligations under the Performance Bond under an express reservation of rights relating <u>to J&A's disputing the propriety of Dobco's termination of the Subcontract and contention that, prior thereto, J&A properly terminated the Subcontract due to Dobco's alleged breach thereof</u>.

Arch/Dobco Settlement Agreement ¶ 3 (emphasis added). Under the unambiguous language of this provision, Arch reserved only its rights with respect to J&A's dispute over the lawfulness of the Subcontract termination. In other words, Arch reserved its right to dispute what it paid Dobco in the event that Dobco, rather than J&A, was found to have breached the Subcontract — but it reserved no more.

The J&A Parties claim that "'propriety' ... includes the scope of the damages that Dobco is allowed to recover under the Subcontract, not just whether the termination itself was justified." Reply 7–8. But the language in Arch's reservation of rights cannot bear that load. Putting aside whatever propriety could mean in other contexts, the rest of the clause here refers expressly to the termination of the Subcontract. It says nothing

about the propriety of the amount Arch agreed to pay or Dobco
received. Indeed, on the J&A Parties' reading, Arch itself could
essentially undo its settlement with Dobco by later deciding to
litigate whether the amount it agreed to pay exceeded the true
cost to replace J&A. But because paragraph 3 allowed Arch to re-
coup only if J&A succeeded on its claim that Dobco breached the
Subcontract with J&A by terminating that contract, then the J&A
Parties, as assignees of Arch's rights, are similarly limited,
because "[a]n assignee acquires no greater rights ... than his
assignor." Rojas v. Cigna Health & Life Ins., 793 F.3d 253, 258-
59 (2d Cir. 2015).

The J&A Parties also claim that they can still bring
"Arch's independently assigned Crossclaim," which "stated that
the $3,900,000 payment to Dobco 'was subject to a full reserva-
tion of rights,'" including the right to "recoup any or all Bond
Losses from Dobco.'" Reply 8 (quoting ECF No. 29 at 29 ¶¶ 2, 5).
But this argument is also unpersuasive. Whatever crossclaims
Arch purported to have against Dobco after it executed its set-
tlement agreement with Dobco would be limited by that agreement.
And in any event, Arch's amended answer makes clear that it un-
derstood any recoupment right it had to be limited by the
Arch/Dobco Settlement Agreement:

> Accordingly, to the extent that J&A proves its claims
> against Dobco in this action; namely that Dobco, and not
> J&A, materially breached the Subcontract such that

<u>Dobco's declaring a Principal Default was improper (rendering its Performance Bond Claim improper), then Arch's reservation of rights will be triggered</u>, entitling it to recoup any and all of its Bond Losses from Dobco, including the Arch Payment.

ECF No. 69 at 31 ¶ 5 (emphasis added). Amending the complaint to add the J&A Parties' proposed recoupment claim against Dobco would therefore be futile.

### III.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed above, it is either moot or without merit. For the foregoing reasons, the J&A Parties' motion to amend is **denied**.

The Clerk is directed to close ECF No. 174.

**SO ORDERED.**

Dated:    New York, New York
          November 13, 2025

_____
John G. Koeltl
**United States District Judge**